1  Johnny Darnell Griggs, State Bar No. 110640
   Gregory G. Gorman, State Bar No. 132724
2  STRATEGIC COUNSEL, PLC
   523 W. Sixth Street, Suite 1128
3  Los Angeles, California 90014
   Telephone: (213) 895-7010
4  Facsimile: (213) 895-7020

5  Attorneys For Plaintiff Forum Enterprises, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORUM ENTERPRISES, INC.<br><br>Plaintiff,<br><br>vs.<br><br>L.A. ARENA COMPANY, LLC.; AEG LIVE, an entity of unknown origin; GOLDEN VOICE, an entity of unknown origin; ANSCHUTZ CORPORATION, a Kansas Corporation; AEG CONCERTS, LLC; ANSCHUTZ ENTERTAINMENT GROUP, an entity of unknown origin; and Does 1-100,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. Monopolization in Violation of Sherman Act 15 U.S.C. §2<br>2. Fraud in the Inducement<br>3. Breach of Contract<br>4. Unfair Business Practices Cal. Bus. & Prof. Code §17200 et seq.<br>5. Misappropriation<br>6. Breach of Fiduciary Duty<br>7. Intentional Interference With Prospective Economic Advantage<br>8. Accounting<br><br>**DEMAND FOR JURY TRIAL** |

Comes now the Plaintiff Forum Enterprises, Inc., and alleges upon information and belief as follows:

**JURISDICTION AND VENUE**

1. This complaint is filed and the jurisdiction and venue of the Court are invoked under the provisions of 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. § 26, and 15 U.S.C. §4 to prevent and restrain a continuing restraint of trade by defendants in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1.

```
9/6/2006 11:01:28 AM   Receipt #: 88228
       Cashier : ABELLAMY [LA 1-1]
Paid by: LA DEPOSITIONS INC
2:CV06-05583
2006-086900      5 - Civil Filing Fee(1)
Amount :                          $60.00
2:CV06-05583
2006-510000     11 - Special Fund F/F(1)
Amount :                         $190.00
2:CV06-05583
2006-086400       Filing Fee - Special(1)
Amount :                         $100.00
Check Payment : 14236 /
                                  350.00
```

2. Venue is proper in this judicial district because the Defendants are found, reside, and/or do business within the District of California, County of Los Angeles, within the meaning of 28 U.S.C. § 1391(b) and (c), and because many of the acts alleged herein occurred in this judicial district.

## NATURE OF THE ACTION

3. Anschutz Entertainment Group ("AEG") is a collection of companies that controls the live entertainment market in Los Angeles and many other parts of the world. In 2005, AEG Live, the music division of AEG, sold more than $700 million in event tickets, making it the second largest concert promoter in the world. Defendant L.A. Arena Company, LLC ("L.A. Arena Company"), is one of the AEG companies making up AEG Live.

4. AEG is more powerful and influential than most promoters because it has developed and owns numerous venues throughout the world. In the Los Angeles area alone, AEG owns and operates Staples Center, the Home Depot Center, the Toyota Sports Center, and the Nokia Theatre (which is in development and will open in 2007). AEG serves as the booking agent and/or operator for numerous other venues.

5. Other companies/divisions that AEG uses to control the entertainment market include: AEG Marketing, a sponsorship, sales, naming rights and consulting company; AEG Merchandising, a multi-faceted merchandising company; AEG Creative, a full-service marketing and advertising agency (formerly Spring Communications) devoted to creation and marketing of live events for pay-per-view and other electronic media; Creative Battery, producers of live entertainment for a variety of media and venues; and AEG Tours & Special Events, and Golden Voice, both live entertainment promotion and touring companies.

6. Controlling a market such as Los Angeles is a key to AEG's national and global intentions and aspirations of domination.

7. There are only two indoor entertainment venues in the Los Angeles area that can seat more than 10,000 people for class A events (national music and other national tours) – Staples Center and The Forum (the "Forum"). AEG owns Staples Center. Plaintiff owns the Forum. In December 2000, an AEG company, L.A. Arena Company, became the exclusive booking

agent for the Forum. Thus, AEG owns and/or controls the large venue market in the Los Angeles area.

8. In 2003, Plaintiff became dissatisfied with AEG's performance as exclusive booking agent. Among other things, AEG represented that it would improve its performance and would increase its booking of events at the Forum. It is now abundantly clear that as a means of putting the Forum out of business as an entertainment venue, AEG has been using its exclusivity rights and market power to prevent the booking of events at the Forum. As set forth below, notwithstanding its marketing expertise and the fact that Staples Center is booked for more than ninety basketball games per year during the period when demand for indoor entertainment facilities is at its highest, AEG has failed to book the Forum at any significant level. In the most recent contract year, the Forum has been booked for only twelve events (a high-water mark for the Forum during its relationship with AEG). AEG was responsible for only two of the events. The remaining ten events were the result of increased efforts by the Forum to book itself – over AEG's objections and under threats of legal action by AEG against the Forum. It also appears that AEG has used information it has obtained as the Forum's booking agent to divert events from the Forum to venues owned and/or controlled by AEG. As a result of this and other illegal conduct, AEG now controls more than 85% of the large venue business in the Los Angeles area.

9. In an effort to provide AEG with an incentive to perform its obligations as exclusive booking agent, Plaintiff demanded that AEG provide a revenue guarantee in the amount of $500,000 per year. Rather than attempt to book the Forum consistent with this incentive, AEG has opted to pay this minimum guarantee while it diverts events to Staples Center and other venues owned and/or controlled by AEG. In other words, AEG has paid $500,000 per year to put the Forum out of business as an entertainment venue. This is not only contrary to Plaintiff's business interests, but also violates the purpose for which it entered into the relationship with AEG. AEG has actual knowledge that $500,000 per year is insufficient to sustain the Forum's operations and that in order to remain in business the Forum must be booked at significant levels. Thus, AEG has attempted to keep the Forum from competing

|   |   |
|---|---|
| 1 | with Staples Center and force the Forum out of business for the mere sum of $500,000 per |
| 2 | year. |
| 3 | 10. Indeed, in a November 2005 letter responding to Plaintiff's complaints, AEG stated "we had |
| 4 | no interest in giving up control of the Forum as an entertainment venue . . .our intention was |
| 5 | to prioritize the booking of STAPLES at every turn." |
| 6 | 11. Plaintiff, which is owned by Faithful Central Bible Church, one of Los Angeles' most |
| 7 | prominent and respected African-American faith-based institutions, can no longer tolerate |
| 8 | this predatory, anti-competitive, and illegal conduct. |

## THE PARTIES

12. Plaintiff Forum Enterprises, Inc. is a Delaware corporation that is authorized to and has, at all relevant times, conducted business in the County of Los Angeles. Plaintiff owns the Forum. Its sole shareholder is Faithful Central Bible Church.

13. Defendant L.A. Arena Company, LLC ("L.A. Arena"), conducted business in the County of Los Angeles at all relevant times.

14. Defendant AEG Live is a corporate entity of unknown origin that conducted business in the County of Los Angeles and States other than California at all relevant times.

15. Defendant Golden Voice, LLC, is a corporate entity of unknown origin that conducted business in the County of Los Angeles and States other than California at all relevant times.

16. Defendant AEG Concerts, LLC, is a limited liability corporation that conducted business in the County of Los Angeles and States other than California at all relevant times.

17. Defendant Anschutz Entertainment Group is a corporate entity that conducted business in the County of Los Angeles and States other than California at all relevant times. Anschutz Entertainment Group owns and/or controls AEG Live, which owns and/or operates AEG Concerts, LLC, L.A. Arena Company and Golden Voice.

18. Defendant Anschutz Corporation is a corporation that does business throughout the Untied States. Anschutz Corporation owns and/or operates Anschutz Entertainment Group.

19. Defendants Anschutz Corporation, Anschutz Entertainment Group, AEG Concerts, LLC, AEG Live, Golden Voice and L.A. Arena Company are jointly referred to herein as AEG unless otherwise specified.

20. The identities of DOES 1 through 100 are not known at this time, but Plaintiffs believe that these DOE Defendants participated in, authorized, and/or directed the conduct of the other Defendants as alleged herein, and therefore are liable either directly or vicariously for the wrongful conduct alleged herein. Plaintiffs will seek leave to amend to add the proper names of these DOE Defendants once their names are ascertained.

21. That at all relevant times, the Defendants were the knowing agents and/or alter egos of one another, and that the Defendants' officers, directors, and managing agents directed, approved, and/or ratified all of the acts and omissions of each of the other Defendants, their agents and employees, thereby making each Defendant vicariously liable for the acts and omissions of their co-Defendants, their agents, and their employees, as is more fully alleged herein. (Hereinafter all cumulative references to "Defendants" are in reference to all Defendants herein, including DOES 1 through 100 unless otherwise specified.)

## FACTUAL ALLEGATIONS

### A. The Booking Agreement

22. In or about December 2000, Plaintiff purchased that certain real property in Inglewood, California, commonly known as the Great Western Forum (the "Forum") a multiple use sports and entertainment arena that seats approximately 18,000 people. It is the former home venue of the Los Angeles Lakers, the Los Angeles Kings, and the Los Angeles Sparks.

23. Plaintiff's sole shareholder is Faithful Central Bible Church ("FCBC"), which as described above, is one of Los Angeles' most prominent and respected African-American churches. FCBC leases the Forum for use on Sundays and for certain religious observances.

24. The Forum operates as both a facility for Sunday services for FCBC as well as a venue for sporting and entertainment events. It is one of two venues in the Los Angeles area that can seat more than 10,000 people.

25. From December 2000 through April 2003, pursuant to the written contract between the parties, Defendant L.A. Arena acted as exclusive booking agent for the Forum (the "Booking Agreement"). A dispute arose in 2002 because, among other things, Plaintiff was dissatisfied with L.A. Arena's/AEG's performance. The dispute was resolved and the Booking Agreement was terminated.

26. On or about April 16, 2003, Plaintiff and Defendant L.A. Arena entered into a written Restated and Amended Exclusive Booking Agreement (the "Restated Agreement"), pursuant to which L.A. Arena contracted to act as the sole agent for the booking of events at the Forum. AEG represented that although L.A. Arena was the formal contracting party, all of the AEG companies would fulfill the exclusive booking agent function and work to book events at the Forum to make sure that the contract was complied with and that Plaintiff would be satisfied with the services provided. For example, on the AEG website and in numerous other representations to the public, AEG purports to control the booking at the Forum with no reference made to L.A. Arena.

27. Plaintiff agreed to enter into the Restated Agreement based upon, among other things, the representations of L.A. Arena and AEG that they would aggressively market and book events at the Forum.

### B. Exclusive Booking Activities

28. The Restated Agreement provides that it is "Agent's right to schedule, book, promote and present Agent Exclusive Events at the Forum shall be exclusive, and the Owner shall not, as long as this Agreement is in full force and effect, permit any other person, firm, corporation or other entity to schedule, book, promote or present Agent Exclusive Events at the Forum."

29. The Restated Agreement also provides that Agent shall "actively promote and advertise the Forum's availability for use by third parties. . . ."

30. The Restated Agreement also states that "in no event shall Owner or its representatives or agents enter into negotiations with any third party for the booking of an Agent Exclusive Event without the participation of Agent in such negotiations and the mutual approval of Agent and Owner in respect of any final agreement to book any such event at the Forum."

31. Pursuant to the Restated Agreement, Defendant was required to utilize "commercially reasonable" efforts to book events at the Forum and to use its business discretion on behalf of the Forum.

32. The Restated Agreement defines Agent Exclusive Events as (i) any musical concert or show or major theatrical/spectacular/dance show . . . which is part of a tour that includes performances in at least four U.S. venues outside of the southern California area; (ii) and (iii) professional and wrestling events; (iv) and (v) ice skating shows and competitions; and (vi) any NCAA Division I preseason, in season or post season tournament. These events are commonly referred to as "Class A" events in the entertainment industry.

33. AEG has taken the position that any and all events that could be held at the Forum are within the Scope of definition of Agent Exclusive Events because there is no limitation in the description as to the size of a particular event. Indeed, notwithstanding the fact that AEG has not taken any action to book events at the Forum, and has diverted events away from the Forum, AEG contends that the Forum is not permitted to increase its revenues by booking events on its own behalf.

### C. The Minimum Payment

34. The Restated Agreement also contains a Revenue Sharing Guarantee. Pursuant to the Guarantee, revenues between Plaintiff and AEG were to be split as follows: (a) 100% of Net Profit (as defined in the Agreement) to be paid to Owner until such time as Owner has received $500,000; (b) thereafter, Net Profit was to be paid 30% to Agent and 70% to Owner (c) in the event Agent booked more than fifteen Exclusive Events during any one Contract Year, (and after the Guarantee was met), 40% of the New Proceeds were to go to AEG and 60% to Plaintiff. As set forth above, Defendants had the exclusive right to book events at the Forum. As Plaintiffs' agent, Defendant was obligated to use its best efforts to obtain as many events as reasonably possible.

### E. Defendants' Intentional Poor Performance

35. Plaintiffs are informed and believe and based thereon allege that AEG did not enter into the Agreement with the intention to perform but, rather, did so in order to control the

7

entertainment market in Los Angeles for large scale venues. In particular, the AEG companies, and each of them, have: (a) despite numerous demands by Plaintiff, made no substantial efforts to book events at the Forum; (b) diverted business away from the Forum to other venues including, but not limited to, Staples Center; (c) made numerous statements to the effect that they entered into the Restated Agreement for the purpose of controlling the market; (d) threatened Plaintiff with legal action for attempting to book the Forum; and (e) actively discouraged the booking of events at the Forum by making misrepresentations to potential customers and others to the effect that the Forum was a church rather than an entertainment venue.

36. Plaintiff is aware of at least five events AEG diverted to Staples Center and/or other venues. Plaintiff is cognizant of the negative impact disclosure of the particular acts in a legal complaint could cause. Accordingly, Plaintiff will disclose the 5 acts to Defendants in discovery pursuant to an appropriate protective order.

37. Notwithstanding AEG's renown in the industry, for two of the last three years, AEG has failed to generate sufficient events at the Forum so as to meet the amount of the guarantee through event revenue streams. Only in the last contract year has the Forum had sufficient events such that it appears that the guarantee will be met. Significantly, for this contract year, the Forum has held approximately twelve events as of the date of this filing. However, only two of the twelve events were obtained through the efforts of AEG, and those events were small and poorly attended. The remaining ten were booked substantially through the Forum's efforts. Ironically, AEG has asserted that these efforts are a breach of the Restated Agreement even though the Forum has compensated AEG as if AEG were responsible for booking these events.

38. Plaintiff complained about AEG's poor performance. In a November 2005 letter responding to Plaintiff's complaints, AEG stated "we had no interest in giving up control of the Forum as an entertainment venue . . . our intention was to prioritize the booking of STAPLES at every turn."

39. As a result of AEG's wrongful conduct, it now controls the booking for well more than 75% of the indoor entertainment events in the Los Angeles area and threatens to exclude the Forum from the market all together, thus causing the Forum's demise.

## FIRST CAUSE OF ACTION

**(For Violation of Section 2 (Monopolization) of the Sherman Act Against Anschutz Corporation and its subsidiaries)**

40. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 38 herein as if set forth in full.

41. Plaintiff is informed and believes and based thereon alleges that Defendant Anschutz Corporation owns and controls, among others, AEG, which owns and controls Defendants AEG Live, L.A. Arena Company, Golden Voice and AEG Concerts, LLC.

42. Anschutz Corporation and its subsidiaries, in the aggregate, control far more than 75% of the indoor entertainment market in the Los Angeles area via ownership and/or booking and/or other agreements.

43. Anschutz Corporation has acted to maintain its monopoly power by, among other things, utilizing confidential information to divert events from the Forum, threatening Plaintiff with actions for breach if Plaintiff acts to obtain competing events or does anything to compete with Anschutz Corporation, booking events at unreasonably low rates and/or a loss and, ultimately, paying approximately $500,000 per year to preclude Plaintiff from competing.

44. Anschutz Corporation's desire to maintain monopoly power is evidenced in a letter dated November 2005 responding to Plaintiff's complaints. In the letter, a representative of the Anschutz Corporation states "we had no interest of giving up control of the Forum as an entertainment venue . . . our intention was to prioritize the booking of STAPLES at every turn."

45. By achieving and exercising monopoly power over the indoor entertainment industry in the Los Angeles area, Anschutz Corporation and its subsidiaries can control and/or exert increased influence over the national and global indoor venue markets.

46. Such conduct violates Section 2 of the Sherman Act, 15 U.S.C. §1, which prohibits monopolization or attempted monopolization.

47. As a result of the conduct of Anschutz Corporation and its subsidiaries, Plaintiff has been injured in the form of lost business. Anschutz Corporation has a dangerous probability of success as exemplified by the Forum's poor performance and the low number of large entertainment venues in the area. Plaintiff prays for all damages available pursuant to the Sherman Act. Plaintiff alleges that its actual damages exceed $5 million.

48. Plaintiff prays for treble damages and such other relief as allowed by law.

## SECOND CAUSE OF ACTION

### (For Fraud In The Inducement Against All AEG Defendants)

49. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 38 herein as if set forth in full.

50. Defendants Anschutz Corporation, Anschutz Entertainment Group, AEG Concerts, LLC, AEG Live, Golden Voice and L.A. Arena Company are jointly referred to herein as AEG.

51. In or about April 2003, Defendants L.A. Arena Company and the other AEG Defendants represented to Plaintiff that they would act in good faith and use commercially reasonable efforts to book events at the Forum.

52. As a result of said representations, Plaintiff entered into an Exclusive Booking Agreement in or about April 2003.

53. AEG represented that although L.A. Arena was the formal contracting party, all of the AEG companies would fulfill the exclusive booking agent function and would work to book events at the Forum to make sure that the contract was complied with and that Plaintiff would be satisfied with the services provided. Consistent with this representation, AEG purported to control the booking at the Forum with no reference made to L.A. Arena on the AEG website and in numerous other representations to the public.

54. AEG's representations were knowingly false. At the time they made said representations, AEG had no intention of attempting to book events at the Forum pursuant to the Restated Agreement. Instead, it was AEG's intention to minimize the number of events at the Forum

10

and to divert events away from the Forum to other venues. It was and is AEG's intention to run the Forum out of business. AEG's fraudulent intentions are evidenced by the fact, among others, that AEG companies: (a) despite numerous demands by Plaintiff, made no substantial efforts to book events at the Forum; (b) diverted business away from the Forum to other venues including, but not limited to, Staples Center; (c) made numerous statements to the effect that they entered into the Restated Agreement for the purpose of controlling the market; (d) threatened Plaintiff with legal action for attempting to book the Forum; and (e) actively discouraged the booking of events at the Forum by making misrepresentations to potential customers and others to the effect that the Forum was a church rather than an entertainment venue.

55. As a result of AEG's fraudulent conduct, Plaintiff has been deprived of events that would have otherwise been held at the Forum and the resulting revenues. Plaintiff has been damaged in an unknown amount but which exceeds $5 million.

56. As a result of said fraudulent conduct and misrepresentations, Plaintiff is entitled to rescind the Agreement.

57. Plaintiff prays for compensatory and punitive damages as allowed at law.

### THIRD CAUSE OF ACTION

**(For Breach of Contract Against all AEG Defendants)**

58. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 38 herein as if set forth in full.

59. Defendants Anschutz Corporation, Anschutz Entertainment Group, AEG Concerts, LLC, AEG Live, Golden Voice and L.A. Arena Company are jointly referred to herein as AEG.

60. Plaintiff entered into an exclusive booking contract with Defendant L.A. Arena Company in April 2003.

61. AEG represented that although L.A. Arena was the formal contracting party, all of the AEG companies would fulfill the exclusive booking agent function and would work to book events at the Forum to make sure that the contract was complied with and that Plaintiff would be satisfied with the services provided. Consistent with this representation, AEG purported to

control the booking at the Forum with no reference made to L.A. Arena on the AEG website and in numerous other representations to the public.

62. Accordingly, pursuant to said agreement, AEG was obligated to use commercially reasonable efforts to book events at the Forum. Instead, among other things, AEG (a) made no real effort to book events at the Forum; (b) diverted events away from the Forum; (c) used Plaintiff's confidential proprietary information to divert events; (d) threatened suit for breach whenever Plaintiff undertook action to increase the booking of events even though AEG was compensated as if they had caused the booking of the event.

63. The conduct alleged herein constitutes material breaches of the agreement.

64. As a result of said conduct, Plaintiff has been deprived of events that would have otherwise been held at the Forum and the resulting revenues. Plaintiff has been damaged in an unknown amount but which exceeds $5 million.

## FOURTH CAUSE OF ACTION

**(For Unfair Business Practices Cal. Bus. & Prof. Code §17200 et seq.**

**Against All Defendants)**

65. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 38 herein as if set forth in full.

66. Section 17200 et seq. of the California Business and Professions Code ("Section 17200") prohibits any "unlawful, unfair, or fraudulent act or business practice."

67. Defendants Anschutz Corporation, Anschutz Entertainment Group, AEG Concerts, LLC, AEG Live, Golden Voice and L.A. Arena Company are jointly referred to herein as AEG.

68. As set forth herein, AEG engaged in conduct that violates the letter and spirit of Federal antitrust law.

69. As set forth herein, AEG misappropriated confidential proprietary information from Plaintiff.

70. As set forth herein, AEG wrongfully diverted events from the Forum.

71. As set forth herein, AEG defrauded Plaintiff with the intention of controlling the entertainment venue market.

72. As set forth above, AEG's wrongful conduct was designed to run a competitor and a church out of business.

73. AEG's conduct was designed to minimize the choices available to the public to those controlled by AEG.

74. As a result of said conduct, Plaintiff has been deprived of events that would have otherwise been held at the Forum and the resulting revenues. Plaintiff has been damaged in an unknown amount but which exceeds $5 million.

75. Plaintiff prays for attorney's fees and all other remedies and amounts recoverable and/or available at law.

## FIFTH CAUSE OF ACTION

### (Misappropriation Against All Defendants)

76. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 38 herein as if set forth in full.

77. Defendants Anschutz Corporation, Anschutz Entertainment Group, AEG Concerts, LLC, AEG Live, Golden Voice and L.A. Arena Company are jointly referred to herein as AEG.

78. In its capacity as booking agent for Plaintiff, AEG became aware of confidential and/or proprietary information regarding Plaintiffs' operations. Among other things, said defendants became aware of the (a) dates upon which the Forum was available; (b) which acts or events had requested "holds" on the Forum's calendar; (c) terms upon which Plaintiff would do a deal; (d) terms of which Plaintiff could do a deal and still break even; and (e) terms requested and/or sought by acts who were considering the Forum as a venue. This confidential and/or proprietary information was misappropriated by AEG and used for impermissible purposes, including, but not limited to, the diversion of events from the Forum to Staples Center and other venues.

79. Plaintiff is aware of at least five events AEG diverted to Staples Center and/or other venues by virtue of its misappropriation of the Forum's confidential and/or proprietary information. Plaintiff is cognizant of the negative impact disclosure of the particular acts in a legal

13

complaint could cause. Accordingly, Plaintiff will disclose the five acts to Defendants in discovery pursuant to an appropriate protective order.

80. Thus, AEG misappropriated confidential information and Plaintiff's business opportunities.

81. As a result of said conduct, Plaintiff has been deprived of events that would have otherwise been held at the Forum and the resulting revenues. Plaintiff has been damaged in an unknown amount but which exceeds $5 million.

82. Plaintiff prays for compensatory and punitive damages as allowed at law.

## SIXTH CAUSE OF ACTION

### (Breach of Fiduciary Duty Against All AEG Defendants)

83. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 38 herein as if set forth in full.

84. Defendants Anschutz Corporation, Anschutz Entertainment Group, AEG Concerts, LLC, AEG Live, Golden Voice and L.A. Arena Company are jointly referred to herein as AEG.

85. AEG represented that although L.A. Arena was the formal contracting party, all of the AEG companies would fulfill the exclusive booking agent function and would work to book events at the Forum to make sure that the contract was complied with and that Plaintiff would be satisfied with the services provided. Consistent with this representation, AEG purported to control the booking at the Forum with no reference made to L.A. Arena on the AEG website and in numerous other representations to the public.

86. A material factor in Plaintiff's survival is the amount of revenues generated by booking events. AEG became Plaintiff's sole and exclusive booking agent and, therefore, undertook a fiduciary duty to Plaintiff. Accordingly, Plaintiff placed particular trust and confidence in AEG. AEG, and each of the companies comprising AEG, undertook the fiduciary duty of Plaintiffs' exclusive booking agent.

87. AEG became aware of confidential proprietary information regarding Plaintiffs' operations. Among other things, said defendants became aware of the (a) dates upon which the Forum was available; (b) which acts or events had requested "holds" on the Forum's calendar; (c) terms upon which Plaintiff would do a deal; (d) terms of which Plaintiff could do a deal and

still break even; **(d)** terms requested and/or sought by acts who were considering the Forum as a venue.

88. Plaintiff is aware of at least five events AEG diverted to Staples Center and/or other venues. Plaintiff is cognizant of the negative impact disclosure of the particular acts in a legal complaint could cause. Accordingly, Plaintiff will disclose the five acts to Defendants in discovery pursuant to an appropriate protective order.

89. In addition, AEG breached its duties to Plaintiff by making no real effort to book events at the Forum. It was and is AEG's intention to minimize the number of events at the Forum and run Plaintiff out of business.

90. As a result of said conduct, Plaintiff has been deprived of events that would have otherwise been held at the Forum and the resulting revenues. Plaintiff has been damaged in an unknown amount but which exceeds $5 million.

91. Plaintiff prays for compensatory and punitive damages as allowed at law.

## SEVENTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage against All Defendants)**

92. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 38 herein as if set forth in full.

93. There are three major concert promoters in the United States and only two indoor entertainment venues in the Los Angeles area that can hold more than 10,000 people. Accordingly, Plaintiff, as owner of one of the two venues, has an economic relationship with said promoters. Given that Staples Center has more than ninety professional basketball games during the fall and winter when demand for indoor venues is at a peak, Plaintiff has a reasonable expectation of an economic advantage as a result of said relationships.

94. But for the conduct of AEG in misappropriating information, wrongfully diverting events and telling other promoters that the Forum is a church only, Plaintiff would have realized the benefits of its status. Instead, the Forum has just barely been used and, in fact, is in danger of going out of business altogether.

95. The conduct of AEG was wrongful and not privileged and constitutes wrongful interference with Plaintiff's economic advantage.

96. As a result of said conduct, Plaintiff has been deprived of events that would have otherwise been held at the Forum and the resulting revenues. Plaintiff has been damaged in an unknown amount but which exceeds $5 million.

97. Plaintiff prays for compensatory and punitive damages as allowed at law.

## EIGHTH CAUSE OF ACTION

### (Accounting Against All AEG Defendants)

98. Plaintiff incorporates the allegations set forth in Paragraphs 1 through 38 herein as if set forth in full.

99. Defendants Anschutz Corporation, Anschutz Entertainment Group, AEG Concerts, LLC, AEG Live, Golden Voice and L.A. Arena Company are jointly referred to herein as AEG.

100. As set forth above, AEG agreed to become Plaintiff's agent and fiduciary. As a matter of law, fiduciaries and agents are required to account for all amounts and profits they received by virtue of the fact that they took advantage of opportunities that should have properly benefited the principal.

101. AEG has failed and continues to fail to account to Plaintiff for the amounts it received from the following events it diverted from Plaintiff; (a) Aerosmith; (b) Tool; (c) Cirque de Soleil; (d) AFI; and (e) Madonna.

102. Accordingly, AEG requests that the Court issue an order requiring AEG to account for the amounts received from any and all events at Staples so Plaintiff can determine the extent to which its agent breached its obligations.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

1. That judgment be entered against defendants, and each of them, in an amount not less than $5,000,000;
2. For prejudgment and post judgment interest;
3. For attorney's fees;
4. For a declaration of the rights of the parties;

5. For the imposition of punitive damages; and

6. For such equitable and additional relief as the Court may allow.

DATED: September 6, 2006                    STRATEGIC COUNSEL, PLC
                                            Johnny Darnell Griggs
                                            Gregory G. Gorman

                                            By: _____
                                            Johnny Darnell Griggs
                                            Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all causes and/or issues triable as of right by jury.

DATED: September 6, 2006                    STRATEGIC COUNSEL, PLC
                                            Johnny Darnell Griggs
                                            Gregory G. Gorman

                                            By: _____
                                            Johnny Darnell Griggs
                                            Attorneys for Plaintiff